[DO NOT PUBLISH]

In the

# United States Court of Appeals

For the Eleventh Circuit

_____

No. 21-14497

Non-Argument Calendar

_____

LIWEI ZHOU,

Petitioner,

*versus*

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
Agency No. A205-778-915

_____

2                    Opinion of the Court                    21-14497

Before ROSENBAUM, GRANT, and TJOFLAT, Circuit Judges.

PER CURIAM:

Liwei Zhou seeks review of the Board of Immigration Appeals's ("BIA") final order affirming the Immigration Judge's ("IJ") denial of his application for asylum based on an adverse credibility finding. He argues that both the BIA and IJ failed to apply the "totality of the circumstances" test in assessing the credibility of his testimony, and that substantial evidence did not support the adverse credibility finding.

## I.

Zhou, a native and citizen of China, was admitted to the United States on a B-2 visa in October 2012. In February 2017, the Department of Homeland Security ("DHS") served Zhou with a Notice to Appear ("NTA"), charging him as removable under INA § 237(a)(1)(B), 8 U.S.C. § 1227(a)(1)(B), for remaining in the United States beyond the expiration of his visa, which occurred in April 2013. Zhou conceded the allegations in the NTA, including his removability, and then filed an application for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") based on persecution related to his opposition to China's family planning policies.[1]

---

[1] Zhou does not appeal the denial of CAT relief, so we do not further address this aspect of his application for asylum. Issues not raised in a party's initial

In his written statement, Zhou stated that his wife became pregnant with their second child in August 1992.  Four months into her pregnancy, Chinese officials notified her that she would be required to have an abortion, so they escaped to keep the child. While he and his wife were in hiding, officials tore the roof off their house and tortured and interrogated Zhou's mother to determine the couple's whereabouts.  He and his wife returned to their home following the birth of their second child, and officials informed Zhou's wife that she would be forced to undergo a sterilization procedure, but Zhou insisted that she refuse.  Officials subsequently visited Zhou's home again, and when he objected to his wife being taken to the hospital to undergo the sterilization procedure, police officers pushed him to the ground and beat him with their fists.

After forcing his wife to have a sterilization procedure, officials imposed a fine on Zhou for having a second child.  Because he could not pay it, they detained him at the police station and beat him with belts and batons.  Although his "wife's health was very poor[,] . . . she tried to visit . . . relatives and friends to borrow money," and she collected enough money to pay the fine after three days.  Upon Zhou's release, officials ordered him to report to the police station every week, which prevented him from going to another city to earn money, resulting in him "totally los[ing his] freedom."

---

brief are deemed abandoned. *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1228 n.2 (11th Cir. 2005) (per curiam).

After a merits hearing, the IJ issued an oral decision denying Zhou's application and ordering that he be removed to China. It excluded various exhibits that Zhou had attached in support of his application for untimeliness and prejudice to the government, including the marriage certificate and household registration form. At a scheduling hearing held on August 23, 2017, the IJ noted some discrepancies between what Zhou's counsel and the IJ had in their respective folders. The IJ reminded counsel not to "assume that [the IJ has] everything . . . because [the IJ] may be lacking something and [counsel will] be referring to it during the hearing and [the IJ will] have no idea what [counsel is] talking about."

Counsel had apparently failed to heed the IJ's warning because at the merits hearing on November 8, 2018—over a year later—counsel thought the IJ and the government had certain documents that they either did not have, or that were unauthenticated. Zhou's counsel also attempted to introduce other documents at the hearing. When asked about the untimeliness, counsel stated that he had filed a motion for a continuance due to a scheduled vacation. He assumed it would have been granted, thus providing him with more time, but it was not.

Having excluded a number of exhibits for untimeliness and prejudice to the government, the IJ noted in the oral decision that, "after considering the totality of the circumstances and all relevant factors," it had found Zhou to not be credible for three reasons. First, it found that Zhou's application listed his marriage date as December 26, 1990, but he testified that the ceremony was held on

December 24, 1990, and although he did not know the date of his marriage registration, he thought that it may have been on December 6, 1990.  Second, the IJ further found that Zhou had testified inconsistently regarding why he, rather than his wife, had come to the United States because, although he first stated that she did not come because she experienced health problems related to the sterilization procedure, he later claimed that she did not come because she was a woman who was not cultured, and did not suffer from a loss of freedom in China.  Third, the IJ found Zhou not credible when he claimed that local family planning officials were still actively looking for him due to his failure to check in regularly as a condition of his release.  Though he testified at the merits hearing that officials were "still seeking his whereabouts as of November of 2012 and up until as recently as 10 days ago," neither Zhou's written statement nor his wife's contained such information.

Zhou appealed to the BIA.  The BIA dismissed Zhou's appeal, only reaching the credibility issue in its separate opinion.

## II.

### A.

We review only the decision of the BIA, except to the extent that the BIA expressly adopts or explicitly agrees with the IJ's opinion. *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947–48 (11th Cir. 2010). We review the IJ's opinion to the extent that the BIA has found that the IJ's reasons were supported by the record, and the BIA's decision with regard to those matters on which it rendered its own

opinion and reasoning. *Seck v. U.S. Att'y Gen.*, 663 F.3d 1356, 1364 (11th Cir. 2011). "We do not consider issues that were not reached by the BIA." *Gonzalez v. U.S. Att'y Gen.*, 820 F.3d 399, 403 (11th Cir. 2016) (per curiam).

We "may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right." INA § 242(d)(1), 8 U.S.C. § 1252(d)(1). The exhaustion requirement is jurisdictional and precludes review of a claim that was not presented to the BIA. *Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam). The petitioner must have argued "the core issue now on appeal" before the BIA, and although the exhaustion requirement does not mandate well-developed arguments and precise legal terminology, it requires the petitioner to "provide information sufficient to enable the BIA to review and correct any errors below." *Indrawati v. U.S. Att'y Gen.*, 779 F.3d 1284, 1297 (11th Cir. 2015) (quotation marks omitted).

As an initial matter, therefore, by failing to address the issue in his initial brief, Zhou has abandoned any argument related to the denial of his claim for withholding of removal. We are precluded from reviewing whether the IJ failed to consider or improperly excluded corroborating evidence as well, because Zhou did not present the issue to the BIA. We also do not consider the merits of his asylum claim, as the BIA did not reach that issue.

### B.

We review de novo all legal issues. *Zheng v. U.S. Att'y Gen.*, 451 F.3d 1287, 1289 (11th Cir. 2006) (per curiam). Credibility determinations are reviewed under the substantial evidence test. *Chen v. U.S. Att'y Gen.*, 463 F.3d 1228, 1230–31 (11th Cir. 2006) (per curiam). "The trier of fact must determine credibility, and this [C]ourt may not substitute its judgment for that of the BIA with respect to credibility findings." *D-Muhumed v. U.S. Att'y Gen.*, 388 F.3d 814, 818 (11th Cir. 2004); *see also* INA § 242(b)(4)(D), 8 U.S.C. § 1252(b)(4)(D). Under the highly deferential substantial evidence test, we must affirm the BIA's decision if it is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026–27 (11th Cir. 2004) (en banc) (quotation marks omitted). We view the evidence in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision. *Id.* at 1027. The mere fact that the record may support a contrary conclusion is not enough to justify a reversal of the agency's findings. *Id.* Instead, we will reverse the IJ's credibility findings "only if the evidence compels a reasonable fact finder to find otherwise." *Chen*, 463 F.3d at 1230–31 (quotation marks omitted).

"The asylum applicant must establish eligibility for asylum by offering credible, direct, and specific evidence in the record." *Forgue v. U.S. Att'y Gen.*, 401 F.3d 1282, 1287 (11th Cir. 2005) (quotation marks omitted). "In order to qualify for asylum, the applicant must establish: (1) past persecution on account of a statutorily

protected ground or (2) a well-founded fear of future persecution on account of a protected ground." *Li Shan Chen v. U.S. Att'y Gen.*, 672 F.3d 961, 964 (11th Cir. 2011) (quotation marks omitted). If found to be credible, an applicant's testimony is sufficient on its own to establish these factors. *D-Muhumed*, 388 F.3d at 818–19. Conversely, if the applicant is found not credible and has not provided sufficient corroborating evidence, an adverse credibility determination alone may be sufficient to support the denial of such a claim. *Forgue*, 401 F.3d at 1287. However, even if an individual is found to be not credible, the IJ has a duty to consider other evidence produced by the asylum applicant. *Id.*

A credibility determination may be based on the totality of the circumstances, including the following: (1) the demeanor, candor, and responsiveness of the applicant; (2) the plausibility of the applicant's account; (3) the consistency between the applicant's written and oral statements; (4) the internal consistency of each statement; (5) the consistency of the applicant's statements with other record evidence, including country reports; and (6) any inaccuracies or falsehoods in such statements, "without regard to whether an inconsistency, inaccuracy, or falsehood goes to the heart of the applicant's claim, or any other relevant factor." INA § 208(b)(1)(B)(iii), 8 U.S.C. § 1158(b)(1)(B)(iii). When the IJ makes an adverse credibility finding, "the IJ must offer specific, cogent reasons for the finding." *Chen*, 463 F.3d at 1231. The burden then shifts to the applicant to demonstrate that the decision was not supported by such specific, cogent reasons or by substantial evidence.

*Id.* However, a tenable explanation for any inconsistencies in the applicant's testimony may still not compel reversal of the IJ's adverse credibility determination. *Id.* at 1233. We have held that substantial evidence supported an adverse credibility determination where the applicant's testimony "included at least one internal inconsistency" and "one omission" and the applicant did not provide corroborating evidence that would have rebutted these inconsistencies and omissions. *See Xia v. U.S. Att'y Gen.*, 608 F.3d 1233, 1240 (11th Cir. 2010).

Here, the IJ and BIA did not fail to apply the totality of the circumstances test. The IJ and BIA found Zhou's testimony not credible based on two inconsistencies and one omission: the marriage date, the reason for Zhou rather than his wife coming to the United States, and whether local family planning authorities in China were still looking for him as of the date of the merits hearing. While the marriage date and possibly the reason for immigrating do not go to the heart of Zhou's asylum claim, and the activities of local Chinese authorities do not go to the heart of Zhou's past persecution argument, the INA specifically states that whether or not an inconsistency or omission goes to the heart of an asylum applicant's claim is irrelevant to an IJ's credibility determination.

Further, there are alternative explanations to the latter two inconsistencies and omissions. For instance, there may have been a number of reasons why Zhou rather than his wife immigrated to the United States, rendering the multiple reasons provided at the merits hearing true, rather than contradictory. Additionally, it is

possible that local Chinese authorities have only begun looking for Zhou again after he and his wife had provided their written statements. These alternative explanations do not help Zhou, however, under our highly deferential substantial evidence test. Our review must take the facts in the light most favorable to the agency's decision. Even though an alternative explanation may be plausible, since the alternative explanation is not compelled, we cannot reverse the IJ's determination.

Last, because few of the exhibits were properly admitted, the IJ's credibility decision largely considered Zhou's testimony and his and his wife's written statements in a vacuum without any potentially corroborating evidence. In such a situation, the IJ is in the best position to evaluate an asylum applicant's testimony, demeanor, and body language to determine the applicant's credibility. Accordingly, we deny Zhou's petition for review.

**PETITION DENIED.**